## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THERMASENSE CORP.,

               Plaintiff,

    v.

OMEGA ENGINEERING, INC.,
DWYER INSTRUMENTS, LLC,
ANHEUSER-BUSCH COMPANIES,
LLC, UNILEVER PLC, UNILEVER
UNITED STATES, INC., CONOPCO,
INC., THE MAGNUM ICE CREAM
COMPANY,

               Defendants.

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

ThermaSENSE Corp. ("ThermaSENSE" or "Plaintiff") brings this Complaint for Patent Infringement against Defendants Omega Engineering, Inc., Dwyer Instruments, LLC, Anheuser-Busch Companies, LLC, Unilever PLC, Unilever United States, Inc., Conopco, Inc., and The Magnum Ice Cream Company N.V. (collectively "Defendants") and allege as follows:

### NATURE OF THE ACTION

1.    This is a civil action arising out of Defendants' infringement of United States Patents Nos. 11,686,626 ("the '626 Patent") and 12,313,477 ("the '477 Patent") (collectively, "the Asserted Patents") in violation of the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

### PARTIES

2.    ThermaSENSE Corp. is a corporation organized and existing under the laws of Virginia, having a principal place of business at 2200 Kraft Dr, Suite 1050 #311, Blacksburg, Virginia, 24060.

3.      On information and belief, Defendant Omega Engineering, Inc. ("Omega") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 800 Connecticut Ave, Suite 4W04, Norwalk, CT 06854.

4.      On information and belief, Defendant Dwyer Instruments, LLC ("Dwyer") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 102 Indiana Hwy. 212, Michigan City, IN 46360.  Together with Defendant Omega Engineering, Inc., Dwyer Instruments, LLC does business as "DwyerOmega."

5.      On information and belief, Anheuser-Busch Companies, LLC ("Anheuser-Busch") is a corporation organized and existing under the laws of Delaware, having a principal place of business at One Busch Place, St. Louis, MO 63118.

6.      On information and belief, Unilever PLC ("Unilever") is a foreign corporation organized and existing under the laws of the United Kingdom, with its principal place of business at 100 Victoria Embankment London, EC4Y 0DY, United Kingdom.

7.      On information and belief, Unilever United States, Inc. ("Unilever U.S.") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 111 River Street in Hoboken, NJ.

8.      On information and belief, Conopco, Inc. ("Conopco") is a corporation organized and existing under the law of New York, having a principal place of business as 111 River Street in Hoboken, NJ.

9.      On information and belief, The Magnum Ice Cream Company N.V. ("Magnum") is a foreign corporation organized and existing under the laws of the Netherlands, with its principal place of business at Reguliersdwarsstraat 63, 1017 BK Amsterdam, Netherlands.

## JURISDICTION AND VENUE

10.     This action arises under the patent laws of the United States, Title 35 of the United States Code.

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### Omega

12.     This Court has personal jurisdiction over Omega in this action because Omega is a resident in this District as it is incorporated in this District.  On information and belief, Omega also conducts business in this judicial district, including offering to sell and selling infringing products in this District.

13.     Venue as to Omega is proper in this Court under 28 U.S.C. § 1400(b), because, among other reasons, Omega is incorporated in Delaware, and thus it resides in this District.

### Dwyer

14.     This Court has personal jurisdiction over Dwyer in this action because Dwyer is a resident in this District as it is incorporated in this District.  On information and belief, Dwyer also conducts business in this judicial district, including offering to sell and selling infringing products in this District.

15.     Venue as to Dwyer is proper in this Court under 28 U.S.C. § 1400(b), because, among other reasons, Dwyer is incorporated in Delaware, and thus it resides in this District.

### Anheuser-Busch

16.     This Court has personal jurisdiction over Anheuser-Busch in this action because Anheuser-Busch is a resident in this District as it is incorporated in this District.  On information and belief, Anheuser-Busch also conducts business in this judicial district, including offering to sell and selling products made using infringing products.

3

17.    Venue as to Anheuser-Busch is proper in this Court under 28 U.S.C. § 1400(b), because, among other reasons, Anheuser-Busch is incorporated in Delaware, and thus it resides in this District.

### Unilever

18.    This Court has personal jurisdiction over Unilever in this action because Unilever has established minimum contacts with this forum such that exercise of jurisdiction over Unilever would not offend traditional notions of fair play and substantial justice.  Unilever, directly or indirectly through subsidiaries or intermediaries, (i) conducts its business extensively through Delaware, by shipping, distributing, offering for sale, selling, and advertising products in Delaware that are made using infringing products, (ii) regularly does business or solicits business in Delaware, (iii) engages in other persistent courses of conduct in Delaware, and (iv) derives substantial revenue from products sold to entities or individuals in Delaware.

19.    Venue as to Unilever is proper in this Court under 28 U.S.C. § 1391(c)(3) and Federal Rule of Civil Procedure 4(k)(2) because Unilever is a foreign defendant and, thus, venue is proper in any judicial district.

20.    Unilever describes itself as a "one of the world's leading consumer goods companies, making and selling more than 400 brands in over 190 countries."  *See* Exhibit A at S-10.

21.    Unilever uses an operating model organized around "five distinct Business Groups: Beauty & Wellbeing, Personal Care, Home Care, Nutrition and Ice Cream." *Id.*  One of the many brands Unilever identifies on its website is Ben & Jerry's.  *See* Exhibit B.  These business groups cut across all of Unilever's subsidiaries, including Unilever U.S., creating a global control by Unilever of all actions relating to a certain Business Group.  *See, e.g.*, Exhibit A at S-12 (stating

"The Unilever Group, including Conopco, Inc., uses an operating model organized around five distinct Business Groups[.]")

22.     On information and belief, Unilever exercises control over its subsidiaries—including those referenced herein—through, inter alia: (a) common ownership and corporate control; (b) centralized decision-making regarding product development, manufacturing, and commercialization; (c) unified marketing and sales strategies; (d) shared technical resources and know-how; (e) coordinated distribution channels; and (f) consolidated financial reporting and profit-sharing arrangements. *See, e.g.*, Exhibit T.

23.     Unilever is therefore liable for acts of infringement committed by its subsidiaries vicariously, through agency, or because those subsidiaries are an alter-ego of Unilever.

### Unilever U.S.

24.     On information and belief, Unilever US is a wholly owned subsidiary of Unilever.

25.      On information and belief, Defendants Unilever and Unilever U.S. operate as a unified enterprise, as evidenced, for example, by Unilever and Unilever U.S.'s joint and several guarantees of Unilever Capital Corporation's debt obligations, including but not limited to the August 2024 issuance of $1.75 billion in senior notes, wherein the parent companies unconditionally guaranteed all payment obligations, demonstrating the financial interdependence and unified operation of the enterprise. *See* Exhibit A.  Additional evidence can be seen in Unilever's Annual Report. *See* Exhibit T.

26.     This Court has personal jurisdiction over Unilever U.S. in this action because Unilever U.S. is a resident in this District as it is incorporated in this District.  On information and belief, Unilever U.S. also conducts business in this judicial district, including offering to sell and selling products made using infringing products.

27.     Venue as to Unilever U.S. is proper in this Court under 28 U.S.C. § 1400(b), because, among other reasons, Unilever U.S. is incorporated in Delaware, and thus it resides in this District.

28.     On information and belief, Unilever U.S. exercises control over its own subsidiaries—including those referenced herein—through, inter alia: (a) common ownership and corporate control; (b) centralized decision-making regarding product development, manufacturing, and commercialization; (c) unified marketing and sales strategies; (d) shared technical resources and know-how; (e) coordinated distribution channels; and (f) consolidated financial reporting and profit-sharing arrangements.  *See, e.g.*, Exhibit T.

29.     For example, Unilever U.S. states that Conopco is its "principal operating subsidiary," a corporation organized under the laws of New York and having a principal place of business at 111 River Street in Hoboken, NJ, the same address as Unilever U.S.   *See* Exhibits C and D.

30.     Unilever U.S. controls the conduct of Conopco.  Their headquarters are the same, previously identifying 700 Sylvan Avenue Englewood Cliffs, NJ 07632 USA as their headquarters and now listing their headquarters in Hoboken, NJ.

31.     Unilever U.S. and Conopco have the same corporate directors.  *Compare* Exhibit C *with* Exhibit A at S-12.

32.     Unilever U.S.'s control over Conopco is exemplified by Unilever U.S.'s own website, in which it identifies Conopco as "Conopco Inc DBA Unilever."   *See* Exhibit E. Furthermore, Conopco has filed lawsuits against entities under the name "Conopco, Inc. d/b/a Unilever," and referring itself throughout the complaint as "Unilever."   *See* Exhibit F (Conopco

6

Inc. d/b/a Unilever Complaint). In its corporate disclosure statement for the same lawsuit, Conopco stated that it "does business as Unilever and Unilever Foodsolutions." *See* Exhibit G.

33. Unilever U.S.'s control over Conopco is further exemplified by Conopco being permitted to use the "UNILEVER" trademark as a registered owner. *See* Exhibit H.

34. Unilever U.S. is therefore liable for acts of infringement committed by its subsidiaries vicariously, through agency, or because those subsidiaries are an alter-ego of Unilever U.S.

## Conopco

35. On information and belief, Conopco is a wholly owned subsidiary of Unilever U.S.

36. This Court has personal jurisdiction over Conopco in this action because has established minimum contacts with this forum such that exercise of jurisdiction over Conopco would not offend traditional notions of fair play and substantial justice. Conopco, directly or indirectly through subsidiaries or intermediaries, (i) conducts its business extensively through Delaware, by shipping, distributing, offering for sale, selling, and advertising products in Delaware that are made using infringing products, (ii) regularly does business or solicits business in Delaware, (iii) engages in other persistent courses of conduct in Delaware, and (iv) derives substantial revenue from products sold to entities or individuals in Delaware.

37. Venue as to Conopco is proper in this Court under 28 U.S.C. § 1400(b), because, among other reasons, Conopco is the agent and/or alter ego of Unilever U.S., which is incorporated in Delaware and, therefore, is a resident of Delaware.

38. On information and belief, Conopco exercises control over its own subsidiaries—including those referenced herein—through, inter alia: (a) common ownership and corporate control; (b) centralized decision-making regarding product development, manufacturing, and

commercialization; (c) unified marketing and sales strategies; (d) shared technical resources and know-how; (e) coordinated distribution channels; and (f) consolidated financial reporting and profit-sharing arrangements.

39.     For example, Conopco controls the conduct of its subsidiaries, including for example Ben & Jerry's Homemade, Inc. ("Ben & Jerry's").  In a recent lawsuit, Conopco, Inc. indicated it was Ben & Jerry's 100% sole shareholder.  *See* Exhibit I at 5.  As Conopco itself admitted, "Conopco has the full power and authority to regulate the exercise of the corporate powers and the management of the business and affairs of Ben & Jerry's and to restrict the discretion or powers of the Board."  *Id.* at 1.  Under the terms of Ben & Jerry's acquisition by Unilever PLC in 2000, "the [merger] agreement concentrated broad powers in Conopco (Ben & Jerry's sole shareholder), carving out only very narrow, expressly enumerated powers to a limited-purpose Board."  *Id.* at 6.  "The Merger Agreement recognized Conopco's 'primary responsibility for the financial and operational aspects of [Ben & Jerry's] and the other aspects of [Ben & Jerry's] not allocated to the Company Board."  *Id.*

40.     As such, any acts of infringement made by Ben & Jerry's are vicariously attributed to Unilever U.S. through its subsidiary Conopco, Inc.

41.     Conopco is therefore liable for acts of infringement committed by its subsidiaries vicariously, through agency, or because those subsidiaries are an alter-ego of Conopco.

### Magnum

42.     This Court has personal jurisdiction over Magnum in this action because Magnum has established minimum contacts with this forum such that exercise of jurisdiction over Magnum would not offend traditional notions of fair play and substantial justice.  Magnum, directly or indirectly through subsidiaries or intermediaries, (i) conducts its business extensively through

Delaware, by shipping, distributing, offering for sale, selling, and advertising products in Delaware that are made using infringing products, (ii) regularly does business or solicits business in Delaware, (iii) engages in other persistent courses of conduct in Delaware, and (iv) derives substantial revenue from products sold to entities or individuals in Delaware.

43.     Venue as to Magnum is proper in this Court under 28 U.S.C. § 1391(c)(3) and Federal Rule of Civil Procedure 4(k)(2) because Magnum is a foreign defendant and, thus, venue is proper in any judicial district.

44.     On information and belief, Magnum exercises control over its subsidiaries—including those referenced herein—through, inter alia: (a) common ownership and corporate control; (b) centralized decision-making regarding product development, manufacturing, and commercialization; (c) unified marketing and sales strategies; (d) shared technical resources and know-how; (e) coordinated distribution channels; and (f) consolidated financial reporting and profit-sharing arrangements.

45.     Magnum is therefore liable for acts of infringement committed by its subsidiaries vicariously, through agency, or because those subsidiaries are an alter-ego of Magnum.

### Unilever's Ice Cream Business Demerger

46.     On information and belief, (i) Unilever is in the process of separating its ice cream business into an independent company, (ii) in preparation for this formal demerger, the ice cream business has already been legally separated from Unilever, and (iii) Magnum or subsidiaries that it controls will step into the shoes of Conopco and Unilever U.S. in terms of controlling and directing prior Unilever ice cream subsidiaries such as Ben & Jerry's.  *See, e.g.*, Exhibit U.

### FACTUAL BACKGROUND

47.     On June 27, 2023, the '626 Patent, titled, "Apparatus, systems, and methods for non-invasive thermal interrogation," was duly and legally issued by the United States Patent Office

("USPTO") to inventor Ali R. Roghanizad.  A true and correct copy of the '626 Patent is attached to this complaint as Exhibit J.

48.     On May 27, 2025, the '477 Patent, titled "Apparatus, systems, and methods for non-invasive thermal interrogation," was duly and legally issued by the USPTO to inventor Ali R. Roghanizad.  A true and correct copy of the '477 Patent is attached to this complaint as Exhibit K.

49.     Ali R. Roghanizad is the sole inventor of the inventions described and claimed in the '626 Patent and the '477 Patent.

50.     ThermaSENSE, as assignee, owns the entire right, title, and interest in the '626 Patent and the '477 Patent.

**Omega's Infringing HANI Products**

51.     Omega is a global leader in the manufacturing and distribution of sensors, instruments, and components for process measurement and control, including those related to temperature measurement.

52.     In May 2021, Omega launched its High Accuracy Non-Invasive ("HANI") product line for sanitary and industrial metal pipes.  The HANI product line was quickly recognized as a highly accurate alternative to invasive temperature probes and won several industry awards, including the People's Choice award at 2021 Process Expo event as well as the Cheese, Dairy, Ice Cream, Milk, and Yogurt category of the Innovations Showcase award at the same event.

53.     In a self-published "whitepaper," Omega attributed HANI's unparalleled non-invasive performance to technology that utilized measurements from a heat flux sensor and a temperature sensor to determine the internal temperature of a pipe.  *See* Exhibit L.  The HANI whitepaper described, with remarkable similarity, certain embodiments of the inventions disclosed

in ThermaSENSE's provisional application and WO 2021/003140, both of which were filed well before Omega launched any of its HANI products.

54.    Soon after launch of the HANI product line, Omega claimed that "when we pitched the [HANI] idea internally, it became an instant sensation. The use cases and benefits seem to grow every day." *See* Exhibit M at 4.  Omega also claimed that "Before the HANI, the only way to obtain a fast and accurate temperature reading was to get a probe in the process lines.  After we came up with the idea, we went out and started talking directly to customers to validate our beliefs.  During early development, we had a customer talk about the process of moving one of their invasive probes downstream to obtain a temperature reading closer to their canning line.  The costs to shut their production line down for a day and bring in a sanitary welder just to move a sensing location by 8 ft. were tremendous.  We have many smaller customers who simply can't afford to add new immersion probe sensing locations.  With the ability to clamp-on, read the temperature, clamp-off, and relocate in just minutes, the HANI is a game-changer.  We also have larger customers who make food with inclusions (i.e. ice cream with chocolate chips).  In these applications, immersion probes get coated in product and over time, they drift out of accuracy, respond slower to temperature changes, become difficult to clean—and sometimes even break off in the process.  There are hundreds of use cases beyond just these two, and when you review all the pain points of immersion sensing together, it becomes a no-brainer that non-invasive sensing is the solution." *Id.*

55.    In its 2021 annual report, Omega's parent company at the time (Spectris PLC) reported that "[T]he launch of Omega's new, innovative high accuracy non-invasive temperature sensor ('HANI') in the first half of the year, which has received highly positive reviews from the market.  This clamp-on sensor achieves the same accuracy and fast response times as state-of-the-

art invasive in-pipe temperature sensors in sanitary metal pipes, without the cost and risk, and at a significantly lower price point to current equivalent offerings. Food and beverage has been a key initial target end market[.]" *See* Exhibit N at 35. The report goes on to note that "HANI was a winner of the 2021 Innovation Showcase competition at the Process Expo 2021 trade fair, a competition which recognise the top technological innovations in processing for all industry segments in food and beverage. Other applications for the technology are being planned for additional end markets, such as life sciences and semiconductor manufacturing for the measurement of temperature in plastic pipes." *See id*.

56.    By way of example and not limitation, a claim chart mapping the HANI line of products to the elements of claim 76 of the '626 Patent is attached as Exhibit O.

57.    By way of example and not limitation, a claim chart mapping the HANI product to the elements of claim 1 of the '477 Patent is attached as Exhibit P.

**Omega's/ DwyerOmega's Willful Infringement**

58.    Counsel for ThermaSENSE first contacted Omega on July 15, 2021 making Omega aware of its PCT Application and its favorable written opinion on patentability.

59.    In October 2021, counsel for ThermaSENSE followed up on his prior email after ThermaSENSE reviewed Omega's HANI whitepaper and invited Omega to start licensing discussions. Omega responded that any licensing discussions were "premature."

60.    On December 20, 2022, Omega expanded the HANI product line to include an additional line for plastic pipes. *See* Exhibit Q. On June 7, 2023, a HANI product line for tanks was also launched by Omega. *See* Exhibit R. Later that same year, on October 24, 2023, Omega launched new versions for all the HANI product lines where improvements to water resistance and operational conditions were made to expand applicability for customers. *See* Exhibit S. The

improved HANI product lines continued to utilize surface measurements from a heat flux sensor and a temperature sensor to non-invasively determine internal temperature of the fluid contained within pipes or tanks.

61.    In May 2023, ThermaSENSE received its Notice of Allowance for the '626 Patent.

62.    In August 2023, ThermaSENSE's counsel followed-up with Omega, notifying Omega of the issuance of the '626 Patent and Omega's infringement of it.  No response was received from either Omega's in-house counsel or Omega's Chief Financial Officer.

63.    Given the lack of response from Omega, ThermaSENSE's counsel then followed up with Arcline Investment Management's General Counsel, which by that time had acquired Omega.  ThermaSENSE also followed up with the leadership of the newly-formed DwyerOmega, Mr. Naoto Mizuta and Mr. Chuck Dubois, again informing the leadership of Omega's infringement of the '626 Patent and ThermaSENSE's willingness to engage in licensing discussions.

64.    On January 4, 2024, Mr. Naoto Mizuta responded, informing ThermaSENSE that he would in touch "shortly."  No further emails were received from Mr. Mizuta, and additional follow-up phone calls to DwyerOmega's leadership were left unreturned.

65.    In May 2025, the '477 Patent issued with claims that, again, cover the infringing HANI products.

66.    In June 2025, ThermaSENSE followed-up with Mr. Naoto Mizuta, informing him of the additional patent coverage and opening the door for licensing discussions.  No response was received.

67.    Despite multiple attempts to engage Omega and/or DwyerOmega in licensing discussions, both during the pendency of the Asserted Patents and after their issuance, both entities

failed to work with ThermaSENSE to ensure they were not infringing on ThermaSENSE's intellectual property rights.

68.     As described above, Omega's and/or DwyerOmega infringement of the Asserted Patents has been knowing, deliberate, and willful, since at least as early as the date that the patents respectively issued.   As of those dates, Omega and/or DwyerOmega knew that its conduct constituted and resulted in infringement.   Despite that knowledge, and the repeated identification of Omega's and/or DwyerOmega's infringement by ThermaSENSE as explained above, Omega and/or DwyerOmega nonetheless has committed—and continues to commit—acts of direct and indirect infringement despite knowing that their actions constituted infringement.   Omega's and/or DwyerOmega's conduct in light of these circumstances is egregious.   Omega's and/or DwyerOmega's knowing, deliberate, and willful infringement of the Asserted Patents entitles ThermaSENSE to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## Use of the HANI Products

69.     On information and belief, as of the date of this Complaint, Omega, Dwyer, and DwyerOmega, has previously, and continues to market, offer to sell, and sell the infringing HANI line of products to many different customers in industries such as the beverage, personal care, food, and ice cream industries.   Those customers have included and do include Anheuser-Busch, Unilever, and Magnum and their subsidiaries.   These companies use ThermaSENSE's patented technology in the United States to monitor internal temperature of their pipes and/or tanks during the manufacturing process for products such as, for example, beer, soap, and ice cream.   In doing so, among other advantages, these companies save valuable time and labor during their regular cleaning processes, which increases both product yields and revenue.

## COUNT I:  INFRINGEMENT OF THE '626 PATENT

70.    Plaintiff re-alleges each of the foregoing paragraphs as if fully set forth herein.

71.    The USPTO duly and properly issued the '626 Patent on June 27, 2023.  The '626 Patent was duly assigned to ThermaSENSE, which is the assignee of all right, title, and interest in and to the '626 Patent.  Each and every claim of the '626 Patent is valid and enforceable.

72.    ThermaSENSE has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '626 Patent because there are no unmarked articles subject to a duty to mark, and ThermaSENSE is entitled to damages for Defendants' past infringement.

73.    As set forth above, and in violation of 35 U.S.C. § 271, Defendants have directly infringed the '626 Patent by, among other things, making, using, offering for sale, selling, and/or importing the HANI devices in a manner that infringes at least claim 76 of the '626 Patent.  *See* Exhibit J.

74.    On information and belief, there are no non-infringing uses of the HANI devices.

75.    Omega and/or DwyerOmega has been and now is contributing to the infringement of and/or actively inducing the infringement of the '626 Patent by others by, doing business as Omega and/or DwyerOmega, among other things, distributing or marketing literature and other materials that teach third parties to use the HANI line of products in a manner that directly infringes the '626 Patent.

76.    Omega and/or DwyerOmega has engaged in infringing behavior with knowledge of the '626 Patent which has been duly issued by the USPTO, and is presumed valid.  On information and belief, Omega and/or DwyerOmega has known that its actions constituted and continue to constitute infringement of the valid '626 Patent at least as of June 27, 2023.  Despite

having notice of the '626 Patent, Omega and/or DwyerOmega has continued its infringing activities. As such, Omega and/or DwyerOmega willfully infringes the '626 Patent.

77.     By their actions, Defendants have caused injury and are liable for infringement of the '626 Patent pursuant to 35 U.S.C. § 271.

78.     Defendant Anheuser Busch is liable for infringement based on its actions and those of its subsidiaries, including but not limited to the use of the infringing line of HANI products in the manufacture of beer.

79.     Defendants Unilever, Unilever U.S., Conopco, and Magnum are liable for the acts of infringement conducted by their subsidiaries, including but not limited to, Ben & Jerry's, either vicariously, through agency, or because those subsidiaries are an alter-ego of one or more of these defendants.

80.     The acts of infringement set forth above will cause ThermaSENSE irreparable harm for which ThermaSENSE has no adequate remedy at law. Unless such infringing acts are enjoined by this Court, ThermaSENSE will continue to suffer additional irreparable injury.

81.     By its actions, Defendants' infringement of the '626 Patent has caused damage, and continues to cause damage, in an amount to be determined at trial.

### COUNT II: INFRINGEMENT OF THE '477 PATENT

82.     Plaintiff re-alleges each of the foregoing paragraphs as if fully set forth herein.

83.     The USPTO duly and properly issued the '477 Patent on May 27, 2025. The '477 Patent was duly assigned to ThermaSENSE, which is the assignee of all right, title, and interest in and to the '477 Patent. Each and every claim of the '477 Patent is valid and enforceable.

84.    ThermaSENSE has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '477 Patent because there are no unmarked articles subject to a duty to mark, and ThermaSENSE is entitled to damages for Defendants' past infringement.

85.    As set forth above, and in violation of 35 U.S.C. § 271, Defendants have directly infringed the '477 Patent by, among other things, making, using, offering for sale, selling, and/or importing the HANI devices in a manner that infringes at least claim 1 of the '477 Patent. *See* Exhibit K.

86.    On information and belief, there are no non-infringing uses of the HANI devices.

87.    Omega and/or DwyerOmega has been and now is contributing to the infringement of and/or actively inducing the infringement of the '477 Patent by others by, doing business as Omega and/or DwyerOmega, among other things, distributing or marketing literature and other materials that teach third parties to use the HANI line of products in a manner that directly infringes the '477 Patent.

88.    Omega and/or DwyerOmega has engaged in infringing behavior with knowledge of the '477 Patent which has been duly issued by the USPTO, and is presumed valid.  On information and belief, Omega and/or DwyerOmega has known that its actions constituted and continue to constitute infringement of the valid '477 Patent at least as of May 27, 2025.  Despite having notice of the '477 Patent, Omega and/or DwyerOmega has continued its infringing activities.  As such, Omega and/or DwyerOmega willfully infringes the '477 Patent.

89.    By its actions, Defendants have caused injury and are liable for infringement of the '477 Patent pursuant to 35 U.S.C. § 271.

90.     Defendant Anheuser Busch is liable for infringement based on its actions and those of its subsidiaries, including but not limited to the use of the infringing line of HANI products in the manufacture of beer.

91.     Defendants Unilever, Unilever U.S., Conopco, and Magnum are liable for the acts of infringement conducted by their subsidiaries, including but not limited to, Ben & Jerry's, either vicariously, through agency, or because those subsidiaries are an alter-ego of one or more of these defendants.

92.     The acts of infringement set forth above will cause ThermaSENSE irreparable harm for which ThermaSENSE has no adequate remedy at law.  Unless such infringing acts are enjoined by this Court, ThermaSENSE will continue to suffer additional irreparable injury.

93.     By its actions, Defendants' infringement of the '477 Patent has caused damage, and continues to cause damage, in an amount to be determined at trial.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues that are or may become triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     declaring that Defendants have infringed United States Patents Nos. 11,686,626 and 12,313,477;

B.     permanently enjoining Defendants and their officers, agents, employees, representatives, successors, and assigns, and any others acting in concert with them, from infringing U.S. Patents Nos. 11,686,626 and 12,313,477;

C.     declaring that Omega's and/or DwyerOmega's infringement of the Patents-in-Suit has been willful;

D.     awarding Plaintiff damages resulting from Defendants' infringement adequate to compensate for that infringement;

E.     awarding Plaintiff treble damages as a result of Omega's and/or DwyerOmega's willful infringement;

F.     declaring that this be an exceptional case within the meaning of 35 U.S.C. § 285;

G.     awarding Plaintiff its costs in this action, together with reasonable attorney's fees and pre-judgment and post-judgment interest; and

H.     granting Plaintiff such other relief, including other monetary and equitable relief, as this Court deems just and proper.

Dated:  December 4, 2025

**FISH & RICHARDSON P.C.**

*/s/ Susan E. Morrison*
Susan E. Morrison (# 4690)
Kelly Allenspach Del Dotto (# 5969)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 778-8434
kad@fr.com

John S. Goetz
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
(212) 641-2277
goetz@fr.com

*Attorneys for Plaintiff ThermaSENSE Corp.*